CHARLES A. SWEET AND D. BRADLEY SWEET v. HELEN
S. NEWBERRY, EXECUTRIX OF THE LAST
WILL AND TESTAMENT OF JOHN S.
NEWBERRY, DECEASED.

92   515
f138 4 63

*Principal and surety—Change of contract—Extension of time—*
*Acceptance of note—Discharge of surety.*

1. A corporation contracted to sell a quantity of hoops, to be
delivered on board the cars at a stated price during a desig-
nated season, in consideration of which, and of the guaranty
by one of the directors of the corporation of the fulfillment of
the contract on its part, the vendees agreed to make certain
advances on account of the purchase price. And it is held
that the guaranty covered the performance of the contract by
the corporation, including the shipment of the hoops, and
secured the vendees for any damages sustained by reason of
their non-delivery, including the advances made upon the
non-delivered hoops.

2. It cannot be held, as matter of law, that the vendees departed
from the contract in a manner detrimental to the guarantor
by further evidencing their obligation to make the advances
in the sums and at the times stated in the contract, all of
which antedated the time when any shipments were to be
made, by accepting the drafts of the corporation payable at
the dates named, even though the corporation discounted such
drafts before maturity.

3. It was agreed, at substantially the time of making the contract,
that the corporation should pay the vendees with hoops a bal-
ance due them on account of prior dealings between the
parties, and that the first hoops shipped during the season
designated in the contract should be applied to that purpose.
The contract did not cover specific hoops in the possession of the
corporation when it was made. And it is held that the
guarantor could not complain of such agreement, as no fund
or property in which he was interested was diverted by its
performance, and the duty to make the shipments provided
for in the contract, over and above the amount received upon
the old indebtedness, remained with the corporation at all
times, and was not waived by the vendees.

4. The contract provided for the payment of interest on the

advances until their repayment "by shipment of hoops or otherwise." And it is held that the acceptance by the vendees of a note for a portion of the advances, maturing after the date when by the terms of the contract full payment for the advances should have been made by shipment of hoops, which note was discounted and not held by the vendees at that date, amounted to an acceptance of the note as a discharge of the obligation of the corporation *pro tanto*, and as a payment of the amount of the note on advances, as between the vendees and the guarantor.

Error to Wayne. (Hosmer, J.) Argued April 7 and 8, 1892. Decided July 28, 1892.

Claim against estate of decedent. Claimants and the defendant bring error from the judgment of the circuit court for an amount less than that claimed in probate court. Affirmed. The facts are stated in the opinion.

*F. H. Canfield,* for claimants, contended:

1. The renewals given on account of the first two of the original $4,000 notes did not affect the terms of the contract, and the court erred in finding, as a conclusion of law, that by reason of such renewals Newberry was released from any liability whatever as guarantor; citing Brandt, Sur. (2d ed.) § 366; Coleb. Coll. Secur. § 242; *U. S. v. Hodge,* 6 How. 279; *Paine v. Voorhees,* 26 Wis. 522; *Austin v. Curtis,* 31 Vt. 64; *Remsen v. Graves,* 41 N. Y. 472; *Cary v. White,* 52 Id. 143; and if Newberry had performed the contract upon the default of the company, and had delivered the hoops according to contract, he could have at once maintained his action against the company, even if the notes had not then matured; citing *Hutchinson v. Woodwell,* 107 Penn. St. 519; *Insurance Co. v. Barber,* 50 Conn. 567; *Fox v. Parker,* 44 Barb. 541; *Insurance Co. v. Carson,* 31 Mo. 218; *Rucker v. Robinson,* 38 Id. 157; *Gahn v. Niemcewicz,* 11 Wend. 323.

*Wells, Angell, Boynton & McMillan,* for the estate, contended:

1. The guarantor is discharged, because—
     *a*—The principals were guilty of a departure from the contract in anticipating the advances; citing *Locke v. McVean,* 33 Mich. 473; *Calvert v. Dock Co.,* 2 Keen, 638; *Taylor v. Jeter,*

23 Mo. 244: *Simonson v. Grant*, 36 Minn. 439; *Gilbert v. McGinnis*, 114 Ill. 32; *Warre v. Calvert*, 7 Adol. & E., 143; *Navigation Co. v. Rolt*, 6 C. B. N. S. 550.

b—The contract relations of the principals were enlarged to, embrace the 1883 indebtedness, and make it payable out of the proceeds of the contract.

c—Advances beyond those provided for by the contract were made by agreement between the principals; citing *Bank v. Smith*, 30 Vt. 149; *Plow Co. v. Walmsley*, 110 Ind. 242.

d—The giving of the notes changed the nature and extent of the rights and liability of the principals; citing *Gilbert v. McGinnis*, 114 Ill. 32; and the renewals of the notes extended the time of payment beyond the time fixed for the completion of the contract (*Todd v. School-dist.*, 40 Mich. 294), the acceptance of a note in renewal of a note secured by a guaranty constituting a giving of time, and discharging the guarantor; citing *Bank v. Kercheval*, 2 Mich. 504, 519; *Wheaton v. Wheeler*, 27 Minn. 464; *Andrews v. Marrett*, 58 Me. 539.

MONTGOMERY, J. The claimants filed a claim against the estate of Newberry, amounting to $9,801.56, with interest from December 31, 1884, which was, on appeal to the circuit court, allowed at the sum of $6,320.75, including interest to the 16th day of December, 1890. Both the claimants and the executrix appeal.

The alleged liability of Mr. Newberry grows out of a contract of guaranty made under the following circumstances: The Reed & Sill Cooperage Company, formerly of Detroit, and in which company Mr. Newberry was a director and stockholder, had had dealings with the claimants; and on December 14, 1883, the following contract between them was prepared:

"BUFFALO, N. Y., DECEMBER 14, 1883.
"MESSRS. REED & SILL COOPERAGE COMPANY,
"Detroit, Michigan.

"*Gentlemen:* We hereby make you the following proposition, viz.: To buy from you two million five hundred thousand of No. 1 coil hoops, to be full ¾ inch thick and 1½ inch wide when seasoned, delivered on board cars at Detroit, Michigan, at the price of $5.75 per thousand; delivery of said hoops to begin April 1, and to be shipped

as we direct, in as equal shipments as possible, during the season, which is understood to be until November 1, 1884. In consideration of the above, and of the guaranty of John S. Newberry of the fulfillment of this contract on your part, we agree to advance you $12,000, at the rate of $4,000 per month, the first advance to be made January 5, 1884, and to continue until the $12,000 is all advanced; we to have interest on said advances from the date of the several advances, at the rate of 6 per cent. per annum, until paid, by shipment of hoops or otherwise. "C. A. SWEET & SON."

This was underwritten as follows:

"We accept the above proposition.
"REED & SILL COOPERAGE CO.
"D. H. SILL, Treasurer."

And also with the contract of guaranty:

"In consideration of the above agreement between C. A. Sweet & Son and the Reed & Sill Cooperage Co., I hereby guarantee the fulfillment of this contract on the part of the Reed & Sill Cooperage Co.
"JOHN S. NEWBERRY."

It appears that there had been dealings between Sweet & Son and the Reed & Sill Cooperate Company in the year 1883, upon which there remained due to Sweet & Son $1,960.53. It was agreed, at substantially the time of making the contract above quoted, that the Reed & Sill Cooperage Company should pay this amount with hoops to be shipped, and that the first hoops shipped during the season of 1884 should be applied to that purpose.

As a matter of fact, the $12,000 agreed to be advanced in monthly installments was advanced as follows: On December 14, 1883, Sweet & Son gave an acceptance to the cooperage company for $4,000, which matured January 5, 1884, the date when the first advance was to be made; and on January 3 they gave two acceptances, each of $4,000, and payable, respectively, on the 5th of February and the 5th of March, the dates fixed by the contract.

On the 3d of January the cooperage company executed to claimants one note, dated January 5, 1884, at six months, for $4,000; one dated February 5, 1884, at six months, for $4,000; and one dated March 5, 1884, at six months, for $4,000,—the same being executed and delivered on account of the advances made by claimants. to the cooperage company. Two of these notes were renewed in part by other notes given by the cooperage company to claimants, said renewals being one for $2,-970.93, dated August 8, 1884, which became due and was protested December 11, 1884; another for $2,441.19, due November 11, 1884; and one for $592.33, dated July 8, and due November 11, 1884. The remaining note, of $4,000, was not renewed nor was it paid. Such shipments as had been made, aside from those applied upon the indebtedness of 1883, were applied upon the notes, the balance of which is represented by the renewal notes above referred to.

1. It is claimed by the counsel for the estate that the guaranty does not cover the advances. We think, however, it is clear that it was within the contemplation of all the parties to the contract that the guaranty should insure to claimants the performance of the contract by the cooperage company, including the shipment of the hoops, and. should secure the claimants for any damages sustained by reason of the non-delivery of the hoops. This would include the advances made upon the hoops which were not received. It was clearly not the purpose to extend credit to the cooperage company without the. benefit of the guaranty.

2. It is next said that the advances were not made in accordance with the contract, but were anticipated, and that for this reason the liability of the guarantor is extinguished. But we think the giving of acceptances due on January 5, February 5, and March 5 amounted to ad-

vances on those dates. The fact that the sum was realized by the company before the date required cannot be said to have resulted in injury to Mr. Newberry, the surety, or to have constituted a substantial departure from the terms of the contract. The case might be different if any of the contemplated advances were by the terms of the contract to be made after the first shipment of hoops was due, as in such case it might be urged that the claimants had precluded themselves from protection, and the surety as well (in part), for the breach of the contract by the cooperage company, by refusing further advances. And so in any case, if it is fairly inferable that the advances are to be retained as in any sense a security in the hands of the creditor for the fulfillment of the debtor's contract, unquestionably a departure from this understanding is material. *Warre v. Calvert*, 7 Adol. & E. 143. But in this case all advances were to be made before any shipments were due to be made on this contract, and it cannot be held that, as a matter of law, Sweet & Son have departed from the contract in a manner which is detrimental to the surety, because they have evidenced by their acceptances their obligation to make these payments at the times stated, even though the cooperage company may have discounted the acceptances before their maturity.

3. Was it a departure of which the surety can complain that the first shipment was applied to the old indebtedness? Clearly, if the contract of which Newberry became guarantor had related to specific hoops then in possession of the cooperage company, it would have been, for in that case the contract would have, as between the parties, set apart such hoops to that purpose; but such is not the case here. We know of no law which interfered with the right of Sweet & Son to agree with the cooperage company to ship hoops either in

March or April to satisfy the old indebtedness; and as there was no lien on the hoops shipped; and no particular hoops were set apart under this contract, it was competent to agree that the first hoops shipped should apply in the extinguishment of the indebtedness of 1883. No fund or property in which the surety was interested was diverted, no specific property set apart for the fulfillment of this contract was devoted to another purpose, and the duty to make the shipments provided for in this contract, over and above the amount received upon the old indebtedness, remained with the cooperage company at all times, and was not waived by the claimants.

4. Did the acceptance of notes due at a later date operate to extend the time of payment as to the amount represented by such notes, as found by the circuit judge, and for this reason relieve the guarantor? The notes were received by Sweet & Son, and discounted, and were not held by them November 1, before which time, under the terms of the contract, full payment for advances should have been made by shipment of hoops. This placed it beyond the power of Sweet & Son to enforce collection of the amount represented by these notes, and it must be held to have amounted to an acceptance of the notes as a discharge of the obligation of the cooperage company *pro tanto*. The contract provided that interest be paid until repayment of the advances "by shipment of hoops or otherwise," and the acceptance of these renewal notes must be deemed a payment of that sum on advances, as between Sweet & Son and the surety. *Farmers,' etc., Bank v. Kercheval,* 2 Mich. 519; *Smith v. Shelden,* 35 Id. 42.

It is claimed on behalf of the estate that this was an alteration of the contract which discharged the surety *in toto*. But, as before stated, the contract provided for

the contingency of the cooperage company not fulfilling its contract by the delivery of hoops, and provided for the repayment of the sum advanced, by shipment of hoops or otherwise.  It is difficult to see how the surety could be damnified, except to the extent that time was extended upon this portion of the sum advanced.  If the cooperage company had paid in cash the amount of these extended notes, it could not have worked any injury to the surety.  On the contrary, it would have relieved him to that extent, and, if it be held that these notes withdrew so much of the cooperage company's obligation, it amounted in effect, as between the surety and the claimants, to payment, and, of course, released the surety *pro tanto.*

The conclusions of the circuit judge were in accordance with the views herein expressed, and the judgment below will be affirmed, with costs.

The other Justices concurred.